UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY FOMBY,
#189771,

    Petitioner,                                            Civil Action No. 19-CV-10288

vs                                                   HON. BERNARD A. FRIEDMAN

RANDEE REWERTS,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

Petitioner has filed an application in this matter for a writ of habeas case under 28 U.S.C. § 2254. Petitioner, a fourth-time habitual felony offender, is serving a sentence of fifteen to thirty years for his Wayne County Circuit Court jury conviction for second-degree arson, in violation of Mich. Comp. Laws § 750.73(1), and for placing an offensive substance with intent to injure or cause damage, in violation of Mich. Comp. Laws § 750.209(1)(b).

The habeas petition raises four claims: (1) the trial court erred in failing to grant a mistrial after a juror had contact with a witness, (2) petitioner was denied the effective assistance of trial counsel for his attorney's deficient pretrial preparation, (3) petitioner was denied his right to present a defense when he was prevented from admitting at trial a prior inconsistent statement made by a witness to police, and (4) the trial court incorrectly scored his sentencing guidelines.

For the reasons stated below, the Court shall deny the petition, deny a certificate of appealability, and deny leave to proceed on appeal in forma pauperis.

**I. Background**

The Michigan Court of Appeals summarized the basic facts as follows:

> On May 18, 2015, at about 3:00 a.m., a Molotov cocktail was thrown through a window at defendant's sister's house. Defendant had attended a baby shower at the home the day before, and an argument erupted among several people. Defendant had become enraged when he thought that other shower attendees had hidden his gun. According to witnesses, defendant flipped over a grill, kicked tent stakes, broke a kitchen window, and became involved in a physical altercation with his nephew, Thomale Forris. Defendant's niece, Elontana Embry, in whose honor the shower was held, testified that defendant told her that she and her baby would die that night, and that he would burn down the house.
>
> That night, at approximately 3:00 a.m., the home's seven occupants were awakened by a fire inside the home. Elontana and Thomale both testified that, after they escaped the burning home, they saw defendant riding away from the scene on his moped. Thomale also testified that he overheard a telephone conversation the next day in which defendant stated, "That's why I blew up your house." Defendant's sister, Elaine Embry, similarly testified that she spoke to defendant the day after the fire and he essentially admitted that he had started the fire.
>
> Debris samples removed from the fire scene tested positive for gasoline. Fire Lieutenant Joseph Crandall testified that he investigated the fire and determined that it began in the living room when a Molotov cocktail was thrown through a window.

*People v. Fomby*, No. 332090, 2017 WL 4078057, at *1 (Mich. Ct. App. Sept. 14, 2017).

Following his conviction and sentence, Petitioner filed an appeal of right. His brief on appeal raised four claims:

> I. The trial court violated defendant's due process rights by refusing to grant a mistrial after a witness had contact with a juror and after a witness alleged defendant made a threat about coming to court to testify.
>
> II. Defendant was deprived of his Sixth Amendment right to the effective assistance of counsel and his right to due process where trial

counsel failed to adequately prepare for trial.

III. Defendant's right to present a defense was violated when the trial court erred in declaring as inadmissible impeachment evidence that would have disclosed to the jury defendant was not the culprit who started the fire.

IV. The trial court erred in misscoring certain variables of the sentencing guidelines, resulting in a violation of defendant's due process and statutory rights at sentencing.

The Michigan Court of Appeals affirmed petitioner's convictions and sentences in an unpublished opinion. *Id.* at \*5. Petitioner then sought leave to appeal in the Michigan Supreme Court, raising the same claims, and that court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Fomby*, 913 N.W.2d 310 (Mich. 2018). Petitioner then pursued state post-conviction review in the trial court, but he did not appeal the denial of his motion for relief from judgment in the state appellate courts. Petitioner now raises the same claims he presented on direct appeal.

## II. Legal Standards

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id*. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. Under this standard, a federal habeas

3

court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III. Analysis

### A. Contact Between Juror and Witness

Petitioner's first claim is that the trial court erred in failing to grant a mistrial after it learned of an interaction between a witness and an impaneled juror. After reciting the applicable standard for granting mistrials, the Michigan Court of Appeals denied the claim as follows:

> The first incident about which defendant complains occurred on the third day of trial outside the presence of the jury. Defense counsel reported to the trial court that at the end of the previous day, he observed Juror 6 exchange remarks with a witness. The juror had asked the witness if it had been a long day, and the witness responded affirmatively. The trial court questioned the juror, who acknowledged the "long day" remark, but said the conversation would not affect his ability to be fair. The trial court denied the motion for a mistrial, finding that defendant had not shown prejudice and that the juror's assertion that he could be fair was sufficient.
>
> The trial court did not abuse its discretion by denying defendant's motion for a mistrial after a juror had contact with a witness. Error requiring reversal cannot be presumed simply because a juror was exposed to remarks from other persons. *People v. Nick*, 360 Mich. 219, 227; 103 N.W.2d 435 (1960). In *People v. Schram*, 378 Mich. 145, 160–161; 142 N.W.2d 662 (1966), our Supreme Court affirmed the defendant's conviction even after two jurors acknowledged speaking to the prosecutor about matters unrelated to the proofs in the case. In the instant case, no evidence showed that the juror and the witness spoke about any matter related to the trial. The juror acknowledged the conversation with a witness, in which the juror

4

> merely asked the witness if it had been a long day, and the juror stated that the brief conversation did not affect his ability to render a fair verdict. Under these circumstances, prejudice cannot be presumed and the trial court's decision denying the motion for mistrial was not outside the range of principled outcomes. *See Nick*, 360 Mich. at 227; *Schaw*, 288 Mich. App. at 236.

*Fomby*, 2017 WL 4078057, at *1-2.

This adjudication did not contravene Supreme Court law. The right to an impartial jury imposes on the trial judge the duty to investigate allegations of external jury influences. *See Irvin v. Dowd*, 366 U.S. 717 (1961); *Remmer v. United States*, 347 U.S. 227, 229-30 (1954). A new trial is not required whenever a juror is potentially exposed to an extraneous influence. *See Smith v. Phillips*, 455 U.S. 209, 217 (1982). Rather, a criminal defendant is entitled to "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id*.

In the present case, the trial court did not ignore the claimed extraneous influence. Rather, it allowed petitioner's counsel to put on the record what he observed in the hallway, and then it questioned the juror about this incident under oath. The record supports the conclusion reached by the trial court and court of appeals that the brief contact did not affect the juror's ability to serve impartially. The juror testified that he understood the court's introductory instructions to prohibit him from talking to witnesses about the case. ECF No. 10-12, at 10-11. The juror stated that as he was waiting for the elevator at the end of the day, the witness was standing next to him, and he simply said something along the lines of "long day." *Id*. at 11. The witness answered affirmatively. *Id*. The two rode the elevator together downstairs, but no further words were exchanged. *Id*. at 12. The trial court accepted this testimony as true, and based on this finding it concluded that petitioner failed to demonstrate that he was prejudiced by the contact. *Id*. at 23. The factual finding made by

5

the trial court accepting the juror's account of the contact is presumptively correct on habeas review, and petitioner has offered the Court no reason to disregard this presumption. *See* 28 U.S.C. § 2254(e)(1). The trial court and the Michigan Court of Appeals reasonably concluded that petitioner was not denied his right to an impartial jury. This claim is therefore without merit.

## B. Ineffective Assistance of Counsel

Petitioner's second claim is that his trial attorney rendered ineffective assistance of counsel when he failed to adequately prepare for trial. This claim was raised on direct appeal, and after reciting the constitutional standard governing ineffective assistance of counsel claims, the state court denied relief on the merits as follows:

> Defendant argues that trial counsel should have conducted a better investigation of the case and called witnesses, and obtained telephone records to support his claim of innocence. But defendant provides no specifics to support his allegation that counsel's investigation was inadequate. Defendant does not identify any persons whom he claims should have been called as witnesses on his behalf and does not state what testimony any such persons could have provided. Similarly, he asserts that telephone records "would contain exculpatory or impeaching evidence," but he does not explain what telephone records might exist, how such records could have been favorable or exculpatory, or what testimony they could have impeached. At one point in the proceedings, defendant sought to assert an alibi, but his would-be alibi witness, Jennifer Gordon, was called by the prosecution and testified that she was not with defendant on the night the fire occurred, and she refused defendant's request to provide a false alibi. Trial counsel's failure to present perjured testimony does not constitute ineffective assistance. *People v. LaVearn*, 448 Mich. 207, 217-218 (1995). In denying defendant's motion for a new trial, the trial court found that the phone records to which defendant referred did not exist. Defendant has not presented any evidence showing otherwise. We cannot conclude that trial counsel's failure to call unnamed witnesses and to obtain telephone records the trial court found did not exist in the form defendant claimed fell below an objective standard of reasonableness. Accordingly, defendant has not overcome the presumption that counsel rendered effective assistance. *See Rockey*, 237 Mich. App. at

6

76.

*Fomby*, 2017 WL 4078057, at *3.

When reviewing a state court's denial of an ineffective-assistance-of-counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), federal courts apply a "doubly deferential" standard of review. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). The *Strickland* analysis is itself "highly deferential" to counsel's performance. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance," and the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). When reviewing a state court's decision under 28 U.S.C. § 2554(d), "review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Woods*, 135 S. Ct. at 1376. "The question [on habeas review] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Michigan Court of Appeals reasonably adjudicated this claim. Petitioner's laundry list of allegations regarding his counsel's inadequate preparation find no support in the record. Petitioner supported this claim in the state courts with only his own affidavit. He asserted that his counsel (1) failed to allow him to assist in his own defense, (2) failed to move for a lineup, (3) failed to call alibi witnesses, (3) failed to investigate, (4) failed to interview witnesses, (5) failed to obtain phone records, (6) failed to file a motion to suppress, and (7) failed to move for a speedy trial. None of the allegations merit relief.

Petitioner asserts that he was not provided with copies of discovery materials by his

7

counsel, yet his pro se filings in the state courts included copies of police reports, belying the claim. The record likewise belies petitioner's claim of a failure to conduct pretrial investigation. The record of the pretrial conferences reveals that defense counsel was engaged in the process of obtaining discovery materials. ECF No. 10-5, at 3-5; 10-9, at 6; 10-10, at 13. The trial record shows that counsel adequately prepared for trial as he used the materials obtained in the cross-examination of witnesses and presentation of petitioner's defense.

The claim that counsel should have moved for a lineup identification procedure borders on the frivolous. The two witnesses who testified to seeing petitioner speeding away from the scene of the fire were his niece and nephew. Likewise, the bulk of the witnesses testifying to hearing petitioner threaten to burn down the home were also relatives who knew him. There was one young witness who was not familiar with petitioner who described to police the men she saw start the fire. But as discussed in more detail below, she had rather pronounced mental health issues, so her ability or inability to identify anyone at a lineup would have had very little value given the family members' identification testimony. *See* ECF No. 10-15, at 31, 41.

Petitioner next asserts that his counsel failed to present an alibi defense. Again, the record belies the claim. Petitioner's girlfriend, Jennifer Gordon, testified that petitioner asked her to falsely state that he was with her on the night of the fire. ECF No. 10-15, at 72-73. It was reasonable for petitioner's counsel to avoid presenting an alibi defense in light of the evidence that petitioner tried to fabricate one in advance of trial. In any event, petitioner provided the state courts with no evidentiary proffer that he had any other alibi witnesses. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.*" Burt v. Titlow*, 571 U.S. 12, 23 (2013)

8

(quoting *Strickland*, 466 U.S. at 689).

Petitioner next claims that his attorney failed to prepare for trial. The record indicates otherwise. Defense counsel requested and was appointed a private investigator in advance of trial. ECF No. 10-3, at 5. And any fair reading of the trial record demonstrates that defense counsel was familiar with the facts of the case and the witnesses. Nor has petitioner indicated with any particularity what defenses or opportunities to challenge the prosecutor's case were missed by alleged shortcomings in the pretrial preparation. Similarly, with respect to the phone records, petitioner has failed to show how they would have aided his defense in light of the overwhelming evidence presented against him.

As for petitioner's speedy trial argument, the trial court allowed petitioner to present this argument on his own, and it denied relief on the basis that much of the delay resulted from the time necessary to complete petitioner's competency evaluation. ECF No. 10-9, at 3-5. Counsel did not perform deficiently by failing to present a frivolous argument.

Regarding the suppression argument, petitioner fails to indicate what evidence his counsel should have moved to suppress, and the state courts were not required to speculate as to the basis for this claim. Conclusory allegations of ineffective assistance of trial counsel do not state valid claims for federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).

Finally, in light of the overwhelming evidence of petitioner's guilt, none of the alleged failings petitioner attributes to his counsel resulted in prejudice. The evidence presented at trial overwhelmingly indicated that petitioner threatened the victims before the fire, that two of petitioner's relatives saw petitioner driving away from the scene after the fire, and that multiple witnesses heard petitioner make statements after the fire admitting his guilt. ECF No. 10-12, at

51-52, 63-66, 153, 164; ECF No. 10-13, at 41, 130, 170; ECF No. 10-15, at 72-73. The Michigan Court of Appeals' adjudication of petitioner's ineffective assistance of counsel claim did not involve an unreasonable application of the *Strickland* standard.

## C. Right to Present a Defense

Petitioner's third claim is that his right to present a defense was violated when he was prohibited from offering Nichole Nichols' statement to police regarding what she observed on the night of the fire. The Michigan Court of Appeals found that the prior statement by the witness was not admissible under state law:

> Next, defendant argues that the trial court erred or abused its discretion when it declined to allow Lieutenant Crandall to testify regarding a statement given by Nichole Nichols. At the time the fire occurred, Nichols made a statement in which she did not identify defendant as the perpetrator of the fire. At trial, defendant was allowed to question Nichols regarding her statement, but she testified that she did not remember saying anything recorded in the statement. Defendant sought to also question Crandall about Nichols's statement as a prior inconsistent statement, but the trial court did not allow Crandall to testify regarding Nichols's statement on the ground that Nichols had testified that she could not recall making the statement. Defendant asserts that the trial court erred by not allowing Crandall's testimony. We disagree.
>
> We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v. Mardlin*, 487 Mich. 609, 614; 790 N.W.2d 607 (2010) (citation omitted). Any preliminary question of law, such as whether admission of evidence is precluded by a rule of evidence, is reviewed de novo. *Id*.
>
> Defendant argues that Crandall's testimony regarding Nichol's statement was admissible to impeach Nichols under MRE 613, MRE 801(d), or MRE 803(5). We address each claim in turn.
>
> First, MRE 613 provides:
>
>> **(a) Examining Witness Concerning Prior Statement**. In examining a witness concerning a prior statement made by

10

> the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.
>
> **(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness**. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

MRE 613 does not apply under the circumstances of this case. This rule applies when a party seeks to impeach a witness with the witness's own prior inconsistent statement. *See People v. Rodriguez*, 251 Mich. App. 10, 34–35; 650 N.W.2d 96 (2002). Here, defense counsel questioned Nichols about her statement, and then sought to have Crandall testify about Nichols's statement. Crandall could not do so under MRE 613 because the statement was not his own.

Second, MRE 801(d) provides:

> A statement is not hearsay if—
>
> (1) *Prior Statement of Witness*. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or © one of identification of a person made after perceiving the person[.]

MRE 801(d) does not apply under the circumstances of this case. Defense counsel did not seek to cross-examine Crandall regarding Crandall's own prior statement.

Third, MRE 803(5) establishes an exception to the prohibition against hearsay for a recorded recollection as follows:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

> A document may be admitted as a recorded recollection under MRE 803(5) if it meets the following requirements:

>> "(1) The document must pertain to matters about which the declarant once had knowledge; (2) [t]he declarant must now have an insufficient recollection as to such matters; [and] (3) [t]he document must be shown to have been made by the declarant or, if made by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in his memory." [*People v. Dinardo*, 290 Mich. App. 280, 293; 801 NW2d 73 (2010), quoting *People v. Daniels*, 192 Mich. App. 658, 667–668; 482 N.W.2d 176 (1992) (citation omitted).]

> But Crandall did not make the statement in question, and did not profess to have a loss of memory about the subject of the statement. Defendant does not explain how defense counsel could have questioned Crandall about the statement under these circumstances.

> Nichols testified that she remembered making a statement, but did not remember what she said. She examined her written statement, but it did not refresh her memory. Defense counsel did not ask Nichols to read the statement into evidence, but the trial court allowed defense counsel, over the prosecutor's objection, to go through the statement sentence by sentence and ask Nichols if she remembered making each comment. She replied that she did not remember doing so. Thus, defense counsel got the substance of Nichols's remarks in the statement to the jury, albeit in a somewhat irregular manner. No error or abuse of discretion occurred.

Fomby, 2017 WL 4078057, at *3-4.

The right of an accused to present a defense has long been recognized as a

"fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). However, a defendant's right to present a defense is subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). For example, a defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted). In such cases, the question is not whether the jury would have reached a different result, but whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

The Michigan Court of Appeals' denial of this claim did not contravene established Supreme Court law. First, the state court determined that the Michigan Rules of Evidence prevented petitioner from offering the witness's prior statement to police as substantive evidence. This was a reasonable exercise of the state court's discretion in implementing those rules and did not render the trial fundamentally unfair. Petitioner complains that the ruling prevented him from showing that Nichols' description to the police about the men she said she saw at the scene of the fire was exculpatory. This is incorrect. Nichols' mother testified earlier that her daughter was schizophrenic, bi-polar, and suffered from hallucinations. ECF No. 10-15, at 31, 44. Nichols could not spell her own middle name or remember how to spell the name of the last school she attended. *Id*. at 128-129. Nevertheless, petitioner called her as a witness, knowing that she, not surprisingly, could not

13

remember anything about the fire or her prior statement. ECF No. 10-11, 53-57; 10-15, at 132-133.

Despite her lack of memory, petitioner was allowed by the trial court to ask Nichols about every statement in her police statement, and she essentially denied remembering that she told the police any of the story. *Id*. at 133-138. The jury was made aware of the contents of her prior statement through this method of cross-examination. The only thing petitioner was prevented from doing was introducing the prior statement as substantive evidence during the police officer's testimony, something that was foreclosed by state evidentiary rules, as the Michigan Court of Appeals explained

In any event, any error was harmless because the failure to use the prior statement as substantive evidence did not have a substantial impact on the result of the trial. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009). For the reasons stated above, the evidence presented against petitioner was overwhelming. A defense resting on the use of a prior statement made by a witness with severe mental impairments, who unlike the identifying witnesses did not know petitioner, had no reasonable likelihood of succeeding. Petitioner's third claim is therefore without merit.

**D. Sentencing Guidelines**

Petitioner's fourth claim is that the trial court erroneously scored the sentencing guidelines. This state-law claim does not present a cognizable question on federal habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S.

14

1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5. Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000).

Moreover, no Sixth Amendment issue was implicated by the scoring of the guidelines because petitioner was sentenced under the post-*People v. Lockridge*, 498 Mich. 358 (2015), non-mandatory version of the sentencing guidelines. *See Clarmont v. Chapman*, No. 19-13226, 2019 WL 6683852, at *4 (E.D. Mich. Dec. 6, 2019). This Court is bound by the state court's rejection of petitioner's claim that the trial court improperly applied the Michigan sentencing guidelines. This claim has no merit.

## IV. Conclusion

For the reasons stated above, the Court concludes that petitioner is not entitled to habeas relief on any of his claims. Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue, as petitioner has failed to make a substantial showing of a denial of any of his constitutional rights.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis because any appeal in this matter would be frivolous.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: March 27, 2020
Detroit, Michigan